538 A.2d 49

**Scott B. SCHULMAN, Appellant,**

v.

**FRANKLIN AND MARSHALL COLLEGE.**

Superior Court of Pennsylvania.

Argued Sept. 16, 1987.

Filed Feb. 22, 1988.

346

James H. Thomas, Lancaster, for appellant.

David R. Keller, Philadelphia, for appellee.

Before CIRILLO, President Judge, and CAVANAUGH, BROSKY, DEL SOLE, MONTEMURO, TAMILIA, KELLY, POPOVICH and JOHNSON, JJ.

TAMILIA, Judge:

This appeal calls to mind two relevant quotations by noted authors. The first, "Life is My College, May I Graduate Well, and Earn Some Honors", was penned by Louisa May Alcott. The second, "A University Should be a Place of Light, of Liberty and of Learning", is by Disraeli. Appellant Scott Schulman apparently heard of neither.

Plaintiff/appellant Scott Schulman filed a complaint in equity requesting preliminary injunctive relief from a one-year suspension from attendance at Franklin and Marshall College. At the time of the suspension, appellant was a

sophomore and the suspension was for a portion of the spring 1986 and the entire fall 1986 semesters with the suspension to be noted in his transcript as required by the sanctions outlined in the College Student Code.

Pursuant to the Student Code, appellant was found guilty by the Committee on Student Conduct for violating various sections of the Code in that he was guilty of misconduct involving fellow female students. These instances of misconduct included harassing female students and making lewd and lascivious comments about their dress, body and behavior; locking two female residents out of their rooms while he was in the room going through the lingerie drawers of both women and exchanging the contents of both drawers; placing a condom on the door of a female student; loitering near the women's bathroom, sometimes "falling into" the women's shower room while women were trying to bathe and following women into the bathroom; setting fire to a pair of men's underwear that was attached to the doors of two female students; pushing a female student against her will onto a bed and attempting to pull up her nightgown in front of his roommate; grabbing a female student by the breasts several times against her will; and verbally harassing two female students on numerous occasions. Following the hearings on these charges and the finding of guilt, appellant took an appeal to the Dean of Students who affirmed the decision of the Committee. Thereafter, the appellant was permitted to remain in school pending appeal with the stipulation that he was to stay out of the student dining room and was to avoid any contact with the female students.

Appellant violated the conditions of this stay of implementation of the suspension and, thereupon, the suspension was put into effect. The appellant then filed an appeal with the College President which was denied by letter dated April 16, 1986. Following that action, appellant filed a complaint for a preliminary injunction in equity and a motion for a special preliminary injunction in the Court of Common Pleas of Lancaster County on April 17, 1986. Pursuant to these petitions, a hearing was held before the Honorable Ronald

L. Buckwalter, in which testimony was taken from the Dean of Students, Career Counselor, Associate Dean of Students, Chaplain of the college, appellant's mother and the appellant. Following the hearing, the trial court denied the preliminary injunction, which required the appellant to go forward with the full trial on the merits to obtain the relief he sought.

Pursuant to Pa.R.A.P. 311(a)(4), an appeal from the denial of the preliminary injunction was properly taken to this Court which, after oral argument, reversed the trial court and invoked the preliminary injunction, remanding for proceedings in accordance with the Opinion filed. Judge Donald Wieand of this Court dissented.

Upon the filing of the Opinion and Order of the panel, a petition for reargument was filed by the appellee which was granted by a majority of the court. Following a hearing before the Court en banc, we determine the Order of the trial court must be affirmed.

The single issue in this case is whether irreparable harm was caused by the denial of the preliminary injunction and the imposition of the sanctions prior to a full hearing on the merits. The trial court found, while there might be some question about the severity of the punishment, there is no question that the harm was not irreparable and could await a full hearing on the merits. We agree with the finding of the trial court.

While the appellant stated seven issues on appeal, they can be reduced in substance to four in number: first, whether the trial court erred in denying appellant's request for a preliminary injunction because the appellant will suffer irreparable harm if a preliminary injunction is not issued; second, whether the procedure employed by appellee failed to afford appellant an opportunity to be heard at a meaningful time in a meaningful manner, and in doing so failed to follow the procedure outlined in the college handbook; third, whether the appellant's rights were violated by allowing an advocate to appear on behalf of the complaining witnesses; and fourth, whether the trial court improperly employed the doctrine of unclean hands.

We have reviewed the record, and in regard to issues two, three and four, find they are without substantial merit and have been properly resolved by the trial court. In the case of issue four, the unclean hands doctrine, the finding by the trial court, although questionable, is irrelevant to a determination of this case. The appellant would have us review, in particular, the proceedings of the court below and of the student committee, the dean and the president in determining whether a preliminary injunction should have been issued. As was found by the trial court and both the panel majority and dissenting Opinions of this Court, proceedings relating to the suspension determination appear to be in conformity with the student handbook and adequate hearings were held with the appeal process being fully complied with to support the suspension. While, for our purposes, we find such a process to be adequate, since it goes to the merits of the issues as to whether or not there was sufficient evidence obtained in a proper manner so as to be credible, those issues are more relevant to an appeal on the merits which we may not pursue at this time. Since there appears to have been no denial of due process, and the suspension appears to have been imposed in a proper manner, our sole concern at this time is whether irreparable harm was created by failure to enjoin suspension pending a hearing on the merits. As to that issue, as the original panel majority stated in its Opinion, for appellant to prevail he was obliged to persuade the Chancellor that the equities weighed in his favor, that he had a high degree of probability of success on the merits and that he would suffer irreparable harm if the preliminary injunction were not granted. This, we understand, is a heavy burden of proof. *Cohen v. Pelagatti*, 342 Pa.Super. 626, 493 A.2d 767 (1985). In addition, it is unlikely the injury in the case could be adequately compensated by an award of damages. *Cosner v. United Penn Bank*, 358 Pa.Super. 484, 517 A.2d 1337 (1986). The panel majority, as support for its position that the preliminary injunction should have been granted and irreparable harm would result if it were not, cited *Unionville–Chadds Ford School District v. Rotteveel*, 87 Pa.

Commw. 334, 487 A.2d 109 (1985) in which the Court affirmed the Order granting a preliminary injunction in favor of a minor appellee who sought to compel a school district to provide him transportation to kindergarten under the relevant provision of the Public School Code because:

> had the requested order not been granted, the minor appellee likely would not have been able to attend kindergarten that year, [and] we believe that the trial court did not abuse its discretion in ruling that the appellees' right to relief was clear, that their need for relief was immediate and that their injury would be irreparable.

*Id.* at 340–341, 487 A.2d at 113.

This and other cases cited by the panel majority are not on point. The child who is denied transportation to kindergarten will never regain the year lost and the benefits of that education, and the determination by the trial court and the Commonwealth Court was that the child was very likely to prevail on the merits. In this case, the student at Franklin and Marshall College will have a delay in his educational process but will not lose the opportunity, by virtue of a suspension, to complete his college training (being wiser in the process) and it is very likely that on review of the case on the merits, the appellant will not prevail.

 The crux of appellant's contention, that irreparable harm will result, is that a notation will appear on the transcript which, according to vocational counsellors brought in as expert witnesses, would interfere with his future in obtaining employment and progressing in his chosen career. This argument is premature. For harm to be irreparable, it must be irreversible. The time lost by the student during class has already been lost and can never be regained. The relief for such time lost, if on the merits the appellant should prevail, would be money damages. As to the notation of the suspension on the transcript, that is not irreversible and the harm foretold by the appellant will not occur unless, in fact, the case is sustained on the merits. Should the appellee be reversed in its application of sanctions, it will be directed by court Order to remove any

reference to the sanctions from the transcript and the harm predicted will not occur. Should the appellee prevail, a notation will appear on the transcript; this is a permissible sanction and appellant cannot claim relief from sanctions brought about by his own behavior.

The error of the panel majority in this case was to overemphasize the availability of other alternatives to the sanctions imposed and to other procedures than those employed by the school officials. It appears these sanctions are not subject to review at this time so long as they were directed in compliance with the fundamentals of due process. The student screening committee passed judgment on the appellant and spoke for the student body. As the control to overreaction by the student body, review by the Dean of Students and the President of the College was available and utilized to avoid unfairness and excess.

The courts have been very reluctant to interfere with college proceedings concerning internal discipline. A college is a unique institution which, to the degree possible, must be self-governing and the courts should not become involved in that process unless the process has been found to be biased, prejudicial or lacking in due process. While many people would apply different standards than those applied by a given college, we must understand that colleges, by their composition, particularly private colleges, will reflect different standards and different attitudes and values concerning student misbehavior. A college is frequently selected by parents and students because of the special aura or quality of life on campus that distinguishes it from other institutions. Frequently, colleges are classified in the public mind and the media as liberal or conservative, religious or secular, party schools or intellectual bastions. From the days of the Medici's, who created the colleges in Florence during the Renaissance, to modern times, colleges have been unique in their insulation from state taxation controls and their self-government.

In this case, particularly with the necessary concern on college campuses as to student activities in the sexual area and with the widespread notoriety and publicity relating to

date-rape and the opportunity for students to take advantage of one another, perhaps fostered by the proximity of students to each other in the mixed dorm communities, the need of the college to protect its students is manifested by actions such as taken here. The trial court recognized the great discretion that reposes in the institution authorities to manage such conditions and the means employed to exercise such control, where reasonable, may not be subverted by the courts. It cannot be denied that college officials must protect the student body as well as assure that students charged with wrong-doing obtain fair treatment. Since the harm to appellant, as we have indicated, was not irreparable, there is no basis for a preliminary injunction to be issued.

To summarize the law in respect to these issues, we quote Judge Wieand's dissent to the majority panel Opinion:

> The law pertaining to the issuance of a preliminary injunction is clear. The application of the law frequently is more difficult.
>
> A preliminary injunction is an extraordinary remedy available only where the party seeking it establishes that; 1) it is necessary to prevent immediate and irreparable harm not compensable in damages, 2) greater harm would result from denying it than from granting it, 3) the right to it is clear and 4) the status quo would be restored if it was granted.
>
> *Pennsylvania Interscholastic Athletic Association, Inc. v. Greater Johnstown School District,* 76 Pa.Commw. 65, 71–72, 463 A.2d 1198, 1201 (1983), citing *Valley Center, Inc. v. Parkhouse,* 62 Pa.Commw. 453, 437 A.2d 74 (1981). See: *Independent State Store Union v. Pennsylvania Liquor Control Board,* 495 Pa. 145, 432 A.2d 1375 (1981); *Credit Alliance Corp. v. Philadelphia Minit–Man Car Wash Corp.,* 450 Pa. 367, 301 A.2d 816 (1973); *Unionville–Chadds Ford School District v. Rotteveel,* 87 Pa. Commw. 334, 487 A.2d 109 (1985). As a general rule, "trial courts are afforded a broad discretion in the granting or refusal of a preliminary injunction after hearing and will be reversed only if such discretion is clearly

abused or if the court committed a palpable legal error." *Commonwealth v. Schall*, 6 Pa.Commw. 578, 581, 297 A.2d 190, 191 (1972). See: *Unionville–Chadds Ford School District v. Rotteveel, supra; American College of Obstetricians & Gynecologists v. Thornburgh*, 613 F.Supp. 656 (E.D.Pa.1985). Upon review, this Court must uphold the trial court's determination if it can be sustained upon "any reasonable ground." See: *Independent State Store Union v. Pennsylvania Liquor Control Board, supra* [495 Pa.] at 157, 432 A.2d at 1381; *Credit Alliance Corp. v. Philadelphia Minit–Man Wash Corp., supra* [450 Pa.] at 371, 301 A.2d at 818; *Pennsylvania Interscholastic Athletic Association, Inc. v. Greater Johnstown School District, supra* [76 Pa. Commw.] at 71, 463 A.2d at 1201.

This carefully stated review of the law needs no further elaboration. The Order of the trial court is hereby affirmed.

Order affirmed.

KELLY and POPOVICH, JJ., concur in the result.